**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **JOHN KIMBLE,** *pro se* | * |
| | * |
| Plaintiff | * |
| | *    **Civil No.  PJM 14-3790** |
| v. | * |
| | * |
| **BANK OF AMERICA, ET AL.** | * |
| | * |
| Defendants | * |

**MEMORANDUM OPINION**

John Kimble, *pro se*, has sued Bank of America and Nationstar Mortgage ("Defendants") over a mortgage refinancing that took place in 1997. The Complaint sets forth seven numbered sections styled as causes of action: Negligence (Claim I), Elder Abuse (Claim II), Common Law Fraud (Claim III), Gross Negligence (Claim IV), Civil Conspiracy (Claim V), Truth in Lending Act Violation (Claim VI), and Theft by Deception/False Pretenses/Negligent Misrepresentation (Claim VII). Defendants have filed a Motion to Dismiss all counts for failure to state a claim. ECF No. 9. Although the Clerk of the Court sent Kimble a letter indicating that if he did not file a timely written response, the Court might dismiss the case or enter judgment without further notice, ECF No. 10, Kimble never filed a response in opposition to Defendants' Motion. For the reasons that follow, the Court **GRANTS WITH PREJUDICE** Defendants' Motion.

**A.**

According to the Complaint, Kimble's parents Reginald and Kay owned a home on Oakview Drive in Silver Spring, Maryland. On June 1, 1984, Reginald signed an agreement that transferred his interests in the home to Kay as trustee for their sons (Plaintiff Kimble and his brother Daniel). Reginald and Kay divorced in 1987.

In 1997, Kay contacted Bank of America in an effort to refinance the mortgage on the home. The Complaint alleges that the loan offered by Bank of America in the amount of $116,250 "included only [$27,000] of a mortgage refinance but included car payoffs as well as unsecured credit card payoffs for her personal credit cards[.]" These additional payoffs, the Complaint alleges, violated the trust agreement, which provided that Kay was allowed to live in the house as long as she desired, but upon her death or sale of the home, the home or proceeds from any sale were to transfer to Kimble and his brother as beneficiaries. The Complaint alleges that Kay was sexually assaulted about a year before the refinancing, and from that time until her death in October 2010, she suffered from severe emotional distress and diminished capacity. The Complaint alleges that Bank of America pressured Kay into the refinancing by misrepresenting facts to her. According to the Complaint, Kay—and only Kay—signed the Bank of America promissory note. The Complaint alleges that during the loan closing, Kimble was never in the room with Kay or his brother. After Kay's death in 2010, spoke with a representative from Nationstar on the phone, in an attempt to modify the loan (Nationstar was presumably the servicer of the mortgage). The Complaint alleges that Nationstar representatives told him that he could not modify the loan because he was not the borrower. According to the Complaint, a foreclosure proceeding was initiated against the home. The Court's review of the public docket indicates that it is still ongoing.

Kimble attaches to the Complaint what he represents is the original Deed of Trust, to which he and his brother are signatories. No signature appears on the signature line for Kay. The Complaint alleges that the Deed of Trust produced in the foreclosure proceedings (presumably by Defendants or their successors in interest) contains a signature line with Kay's signature. The Complaint alleges that this discrepancy makes the lien invalid.

Although Kimble alleges various purported causes of action, the Court understands the gist of his complaint to be that Defendants unlawfully induced Kay to enter into the loan, and that the Deed of Trust itself is invalid because it contains a forged signature. Kimble seeks $1,000,000 in damages, and the removal of the lien on the home.

### B.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). It requires the plaintiff to articulate facts, which if true, would "show" that the plaintiff has stated a claim entitling him to relief, i.e., the "plausibility of entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Ordinarily, a plaintiff proceeding *pro se* is held to "less stringent standards" than a lawyer is, and the court must construe her claims liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, even a *pro se* complaint must meet a minimum threshold of plausibility. *See O'Neil v. Ponzi*, 394 F. App'x 795, 796 (2d Cir. 2010).

If pleadings allege fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under the heightened pleading standard of Rule 9(b), "[t]hese circumstances are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

## C.

Several of Kimble's claims can be dispatched immediately. No cause of action exists in Maryland for a tort of "elder abuse." Kimble's purported TILA claim—that Defendants failed to hire competent and honest individuals—has nothing to do with TILA, which regulates lenders' disclosure obligations.

Kimble's negligence, gross negligence, common law fraud, civil conspiracy claims, and negligent misrepresentation are all predicated on the same allegation: that Defendants failed to sufficiently inform Kimble or Kay about allegedly onerous terms of the loan or the possible consequences of default. However, "[i]t is well established that 'the relationship of a bank to its customers in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature.'" *Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625 (D. Md. 2009) (quoting *Yousef v. Trustbank Savs., F.S.B.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990)). There are certain "special circumstances" that may give rise to a fiduciary duty between borrower and lender. *See Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 418 (Md. 2012)(listing examples of special circumstances). Kimble does not plausibly allege any such special circumstances here. Because the Complaint does not plausibly allege a duty that Defendants violated in the course of extending or servicing the loan, Kimble's negligence and gross negligence claims fail. For the same reasons, Kimble does not plausibly allege a tortious act done in furtherance of a civil conspiracy.

Kimble's common law fraud and civil conspiracy claims also fail. At most, Kimble alleges that Defendants failed to inform Kay and Kimble of certain terms of the loan; *e.g.* the length of repayment or the consequences of a failure to pay. Of course, Kimble does not allege that any such terms were absent from the Deed of Trust. Accordingly, Kimble does not plausibly

allege a knowingly false representation to the Plaintiff by any Defendant, let alone allege fraud with the particularity required by Rule 9(b). For the same reason, Kimble fails to allege a particular false statement of material fact sufficient to state a claim for negligent misrepresentation.

Finally, to the extent that Kimble's claims are predicated on his allegation that the Deed of Trust itself is invalid because it contains a forged signature, Kimble fails to state a claim to relief that is plausible on its face. Kimble alleges that the Deed of Trust that he attaches to the Complaint, ECF No. 1-2, constitute the "original closing documents," ECF No. 1, at 9, and that this "original" Deed of Trust contains no signature by Kay. He concludes that Deed of Trust produced in the foreclosure proceedings, ECF No. 1-3, which does contain Kay's signature, is therefore forged and invalid. However, it is not plausible that this purportedly "original" Deed of Trust, ECF No. 1-2, is in fact the actual, operative Deed of Trust, because this document contains no signature by a notary public. Instead, it is almost certain that Kimble has stumbled upon a copy of the Deed of Trust that he and his brother signed at a point in time prior to the point at which Kay signed the Deed of Trust. Indeed, this is consistent with his allegation that he was never in the room with Kay when she signed the Deed of Trust.

For the foregoing reasons, the Court **GRANTS WITH PREJUDICE** Bank of America's Motion to Dismiss.

A separate Order will **ISSUE**.

                                                                              /s/
                                            **PETER J. MESSITTE**
                                  **UNITED STATES DISTRICT JUDGE**

**August 5, 2015**